STATE ex rel. WALLACE B. DOUGLAS and Another v. GREGORY
P. RITT.

June 9, 1899.

Nos. 11,722—(228).

| 76 | 531 |
| 77 | 452 |
| 76 | 531 |
| 81 | 361 |
| 81 | 488 |
| 76 | 531 |
| 85 | 439 |

County Assessor—Laws 1899, c. 140, Invalid—Classification Unconstitutional.

Laws 1899, c. 140, provides: "Section 1. There shall be elected in each county in this state, having a population of not less than 100,000 and not over 185,000 inhabitants, a county assessor, who shall hold his office for two years from and after the first Monday in January next succeeding his election," etc. "Sec. 6. The board of county commissioners of such counties shall at their first meeting after the passage of this act nominate and appoint a county assessor, who shall fill such office * * * until the next general election to be held in the month of November, 1900, and until his successor is elected and qualified." The primary and essential provision of the act, and that which differentiates counties falling within its operation, is that it provides for one county assessor for the whole county, instead of an assessor for each municipal division of the county, as provided by the then existing general laws. *Held*, that the entire act is invalid, as being special legislation regulating the affairs of counties, in violation of section 33, art. 4, of the constitution; the attempted classification by population, as applied to the subject of the act, being incomplete, arbitrary, and evasive of the provisions of the constitution.

Same—Want of Uniformity.

Also, that section 6 is invalid for the further reason that it will not operate uniformly upon all the counties of the class, not being applicable to counties which may come within it subsequently to the annual election in November, 1900.

Writ of quo warranto issued by the supreme court on the relation of Wallace B. Douglas, attorney general, and Robert H. Seng, requiring respondent to show by what warrant he assumed to act as assessor of Ramsey county, and to hinder and prevent relator Seng from discharging the duties of that office.    Judgment of ouster.

*W. P. Westfall*, for relators.

Laws 1899, c. 140, is unconstitutional because it cannot operate uniformly throughout the state, and the classification is arbitrary

and without proper basis. The law is special. The effect and not the form of the law determines its character. Nichols v. Walter, 37 Minn. 264; Com. v. Patton, 88 Pa. St. 258; State v. Copeland, 66 Minn. 315, 318; State v. Cooley, 56 Minn. 540, 552; Burnham v. City, 98 Wis. 128; Groves v. County, 42 W. Va. 587; State v. City, 96 Iowa, 521. The legislature has never made a distinction on basis of population as to the manner of electing county assessors. The law does not create a new office. Classification should not be made the means of evading the prohibition against special legislation. State v. Parsons, 40 N. J. L. 1; State v. Simon, 53 N. J. L. 550; Wanser v. Hoos, 60 N. J. L. 482.

*Samuel A. Anderson* and *George Walsh,* for respondent.

There must be a substantial distinction, having reference to the subject-matter, between the objects and places embraced in the proposed legislation and those excluded. The marks of distinction must be such as in the nature of things will in reasonable degree account for or justify the restriction. See Nichols v. Walter, 37 Minn. 264; Lavallee v. St. Paul, M. & M. Ry. Co., 40 Minn. 249; Johnson v. St. Paul & D. R. Co., 43 Minn. 222; State v. Cooley, 56 Minn. 540; State v. Copeland, 66 Minn. 315; Bowe v. City of St. Paul, 70 Minn. 341. State v. Sullivan, 72 Minn. 126, is in point. The classification is not arbitrary, but is founded on a proper distinction. State v. Mayor, 42 N. J. L. 51; State v. Wood, 49 N. J. L. 85; State v. Hoagland, 51 N. J. L. 62; State v. Scott, 50 N. J. L. 585; Cook v. State, 90 Tenn. 407; State v. Miller, 100 Mo. 439; Mortland v. State, 52 N. J. L. 521; Gillespie v. City, 138 Pa. St. 401; State v. Mayor, 53 N. J. L. 277.

The necessary effect of the act is to repeal such portions of the special laws as provided for the election or appointment of an assessor in Ramsey county, since such special laws are inconsistent, and there is a repealing clause. The repealing clause alone distinguishes the case from State v. Egan, 64 Minn. 331. The case falls within State v. Sullivan, 62 Minn. 283. See Alexander v. City of Duluth, 57 Minn. 47. Where, as in this case, the plain intent is to bring about uniformity in respect to the particular with which the law deals, it is valid, though some portions of special laws are re-

pealed because inconsistent. The act creates a new office, and section 6 is a mere incident, made necessary to fill in the interim before the law could take effect and the next general election. Nor is this section invalid because it requires something to be done by county officials in a specified way. See Simard v. Sullivan, 71 Minn. 517; State v. Sullivan, supra.

MITCHELL, J.

This is a proceeding in the nature of quo warranto to determine the right to the office of assessor of Ramsey county. The relator Seng claims it by virtue of an appointment under the special laws set up in the information, and particularly Sp. Laws 1875, c. 90. The respondent, Ritt, claims it by virtue of an appointment under Laws 1899, c. 140. It is conceded that, if the act of 1899 is valid, Ritt is entitled to the office, but, on the other hand, if that act is invalid, Seng is entitled to it. Hence the only question presented is whether that act is constitutional.

Its validity is assailed on the ground that it is special legislation regulating the affairs of counties, in violation of sections 33 and 34 of article 4 of the constitution of the state, in that (a) the classification of counties by population in the manner provided by the act is arbitrary, and not appropriate to the subject of the legislation; and (b) that the act will not have uniform operation, for the reason that the provisions of section 6 cannot apply to future members of the class which may fall within it subsequent to the annual election in 1900. Section 1 of the act provides that

"There shall be elected in each county in this state, having a population of not less than 100,000 and not over 185,000 inhabitants, a county assessor, who shall hold his office for two years from and after the first Monday in January next succeeding his election," etc.

Section 6 provides

"That the board of county commissioners of such counties shall at their first meeting after the passage of this act nominate and appoint a county assessor, who shall fill such office  *  *  *  until the next general election to be held in the month of November, 1900, and until his successor is elected and qualified."

We have been over the whole subject of classification so often, particularly in Nichols v. Walter, 37 Minn. 264, 33 N. W. 800, and

State v. Cooley, 56 Minn. 540, 58 N. W. 150, that it is unnecessary now to do more than restate two fundamental rules, viz.: First, that the basis of classification cannot be arbitrary or illusive, but must be founded upon such a substantial distinction, having reference to the subject-matter of the legislation, between the objects or places embraced in the subject of the legislation and the objects or places excluded, as suggests the necessity or propriety of different legislation for the two in respect to the matter which is the subject of the legislation; second, that the act must include, and act uniformly upon, all of the class,—that is, all whose conditions and wants render such legislation equally appropriate to them as a class. Judging from much recent legislation in this state, it would seem that the impression is prevalent that because classification on the basis of population may be proper for the purposes of legislation on certain subjects, therefore any classification on the basis of population is appropriate for the purposes of legislation on any subject. The sooner the minds of legislators and others are disabused of this erroneous impression, the better; for under any such rule the provisions of the constitution against special legislation would become wholly nugatory. If it is permissible to adopt for any and all purposes a classification founded upon any and every arbitrary and illusive basis of population, we might have as many acts, general in form, but special in fact, as there are counties, cities, villages, townships, wards, and school districts in the state.

It ought to be apparent to any one on a moment's reflection that under the rules above stated classification on the basis of population may be appropriate for one purpose, and not for another; that is, for legislation upon one subject, and not for legislation upon another. For example, a classification of counties or cities on the basis of population might be proper, as was held in State v. Sullivan, 72 Minn. 126, 75 N. W. 8, for the purpose of fixing the compensation of county or city officers, inasmuch as the extent of their duties and labors presumably will bear some relation to the population of their respective counties and cities, while classification on any such basis for the purpose of fixing the time at which elections should be held to elect such officers would be as arbitrary as if it had been based upon the initial letter of the names of the counties

or cities. See Wanser v. Hoos, 60 N. J. L. 482, 38 Atl. 449. Or again, even where the subject of the legislation is such that classification by population would be proper, a particular basis might be incomplete and arbitrary because it did not include within the class all the objects or places similarly situated; that is, whose conditions rendered such legislation equally appropriate. This, in our opinion, is the fatal defect in the act under consideration.

The essential provision of this act, and the one which was designed to differentiate counties falling within its purview, is the one providing for one assessor for the whole county, instead of an assessor in each township, city, and village, as provided in the then existing general laws. All the other provisions of the act are merely incidental or auxiliary to this. We are not prepared to say that population might not be a legitimate basis upon which to divide counties into two classes,—one in which there should be but one assessor for the entire county, and the other in which there should be an assessor for each municipal division of the county. If such a basis of classification would be proper upon such a subject, it must be because very populous counties usually contain a large amount of urban as well as suburban and rural property, the values of which, according to area, differ greatly, depending upon location and the nature of the improvements, and therefore that it is desirable that all the property in the county should be assessed by, or under the immediate supervision of, one officer, in order to attain greater uniformity in the valuation of the different classes of property. But, the more populous the county, the stronger this reason would apply. If it applies to counties whose population is between 100,000 and 185,000, it applies with still greater force to counties containing more than 185,000. There is no apparent reason suggested by necessity, or by the difference in the situation or circumstances of counties having a population of not less than 100,000 and not over 185,000 and counties having a population of over 185,000, why the county assessor system should be applied to the former, and the latter left under the local assessor system in the same class with counties having a population of less than 100,000. The attempted classification is therefore arbitrary and incomplete, for the reason that it does not include all the members of the same class,

but excludes some whose conditions and wants render such legislation equally necessary and appropriate to them as a part of the same class.

It is urged, however, that we sustain the same basis of classification of counties in State v. Sullivan, supra. The classification in that case was for the purpose of fixing the compensation of county officers, and what was said in the opinion was with reference to that fact. As already suggested, the extent of the services and labors of a county officer is presumably somewhat in proportion to the population of the county. Classification of counties for that purpose might admit of a division of them into quite a number of classes, and in view of that fact our answer to the objection that counties with a population less than 100,000 and those with a population of over 185,000 were unprovided for was that, if the basis of classification is proper as to those objects or places included within it, it is no objection to an act that it makes no provision as to those not falling within the class. We have never been entirely sure as to the correctness of the decision in that case, but the present case is, in our judgment, clearly distinguishable from it. Here, in view of the subject and object of the legislation, there is room for only two classes of counties, viz. those to which the "local assessor" system and those to which the "county assessor" system shall apply, and the attempted classification omits a part of those counties which belong to and ought to be included in the latter class.

It is also urged that the legislature must be allowed a large discretion in the matter of classification by population. This is true, but all that this means is that a classification of municipalities by population in statutes relating to their structure, machinery, and powers is legitimate where population bears a reasonable relation to the subject of the legislation; and, classification in such cases being committed to the judgment of the legislature, its judgment should prevail, unless the classification be manifestly arbitrary, illusory, or applied for the purpose of evading the provisions of the constitution. These are the exact facts in this case. That it was intended to apply only to Ramsey county would not be clearer if the act had in express terms so stated.

In view of what has been said, it becomes unnecessary to con-

sider section 6 of the act (the very one under which respondent obtained his appointment) except to say that in any event it would be invalid, for the reason that by its very terms it could never apply to any county which might come into the class subsequent to the annual election in November, 1900.  Burnham v. City, 98 Wis. 128, 73 N. W. 1018.  It follows that the relator Seng is entitled to the office, and that the respondent, Ritt, is unlawfully in possession of it.

Let judgment of ouster be entered.